FILED
2012 Jul-26 AM 10:51
U.S. DISTRICT COURT
N.D. OF ALABAMA

# EXHIBIT A

EXECUTION VERSION

## REAL ESTATE PURCHASE AND SALE AGREEMENT

This Real Estate Purchase and Sale Agreement ("**Agreement**") is entered into as of the 24th day of October, 2007 (the "**Effective Date**") by and between DEUPREE'S GAS, INC., a Alabama corporation ("**Deupree's**" or "**Seller**"), and SUBURBAN GAS PROPANE PARTNERS, LLC, a Maryland limited liability company ("**Purchaser**").

1. **Purchase and Sale**. Seller agrees to sell to Purchaser, and Purchaser agrees to purchase from Seller, in accordance with the terms and conditions set forth in this Agreement and for the Purchase Price set forth in Section 2: (i) that certain parcel of land located at 40471 U.S. Highway 280, Sylacauga, Alabama 35150, as more particularly described in Exhibit A attached hereto and made a part hereof (the "**Land**") and any and all improvements thereon (the "**Improvements;**" together, the Land and the Improvements, the "**Real Property**"); and (ii) all appurtenances belonging to the Real Property (collectively, the "**Property**").

2. **Payment of Purchase Price**. The total purchase price for the Property (the "**Purchase Price**") shall be (a) Six Hundred Thousand Dollars ($600,000.00), less (b) any amounts paid by Purchaser under Section 4 of the Lease by and between Deupree's (as "**Landlord**") and Purchaser (as "**Tenant**") dated August 28, 2007 (the "**Lease**") as of the Closing Date (as hereinafter defined). At the time of closing of the purchase and sale of the Property (the "**Closing**"), Purchaser shall deliver to Deupree's a $400,000 Subordinated Promissory Note in substantially the form attached hereto as Exhibit B. The remainder of the Purchase Price shall be due and payable at Closing, and shall be delivered by Purchaser by federal wire transfer to Deupree's of immediately available funds on the Closing Date.

3. **Condition of Property**. Seller shall deliver the Property at Closing in materially the same condition as of the Effective Date, ordinary wear and tear and damage caused by Purchaser excepted. The Improvements are being conveyed to Purchaser "AS IS." The Transfer of the Property to Purchaser is subject to the representations and warranties of Seller as set forth in Section 10 below.

4. **Inspection**.

Within ten (10) days following the written request of Purchaser, Seller shall make available for inspection and copying at Purchaser's sole expense, all contracts, tax assessments and other documents relevant to the Property as Purchaser deems appropriate.

5. **Title and Survey**.

A. Seller shall convey to Purchaser and Purchaser shall accept such title to the Property as a reputable nationally recognized title insurance company licensed by the State of Alabama shall be willing to insure (at standard rates without any special or additional premium) by special warranty deed commonly used in the jurisdiction in which the Land is located. Title shall be subject to the use and occupancy restrictions of public record relating to the Property and other recorded instruments (the "**Permitted Exceptions**").

6. **Closing**. The Closing shall occur during normal business hours on or before October 24, 2007 (the "**Closing Date**"). Closing shall take place at such place as the parties

shall mutually agree. Seller agrees to conduct Closing through a pre-closing, escrow or other arrangement reasonably requested by Purchaser to facilitate closing mechanics and to reduce or eliminate the need for Purchaser and its attorneys to be physically present at the Closing.

7. **Prorations, Apportionments and Adjustments at Closing**. Subject to any payment obligations of Purchaser under the Lease, the following shall be apportioned with respect to the Property as of 12:01 a.m., on the Closing Date, as if Purchaser were vested with title to the Property during the entire day upon which the Closing occurs:

(i) real estate and similar taxes ("**Property Taxes**") assessed against the Property; and

(ii) any other expenses and items of expense pertaining to the Property which are customarily prorated between a purchaser and a seller in the area in which the Property is located.

8. **Transaction Costs**. Seller shall be responsible for the cost of preparing the deed and for releasing all liens currently encumbering the Property and recording such releases. Purchaser shall pay the cost of conducting its due diligence studies, the costs of any title commitments and title policies and the cost of the survey, if any. Each party shall pay its own attorneys' and consultants' fees. The parties shall share equally payment of the cost of all documentary stamps, recordation taxes, transfer taxes and similar taxes required by law.

9. **Closing Documents and Deliveries**.

A. At the Closing, Seller shall deliver the following:

(i) The executed and acknowledged deed, in substantially the form attached as Exhibit C, which Purchaser shall cause to be recorded;

(ii) Any and all required transfer tax returns, duly executed by Seller, as transferor;

(iii) Any and all required affidavits as Purchaser's title insurance company may reasonably require;

(iv) The Subordination Agreement by and among Deupree's, Purchaser, Thompson's Gas & Electric Service, a Maryland corporation ("**TGES**"), and Bank of America, N.A. ("**Lender**"), in substantially the form attached hereto as Exhibit D (the "**Subordination Agreement**"), duly executed by an authorized officer of Deupree's; and

(v) A closing statement, duly executed by an authorized officer of Deupree's.

**EXECUTION VERSION**

    B.    At the Closing, Purchaser shall deliver the following:

    (i)    The Purchase Price paid to Deupree's, in cash or immediately available funds;

    (ii)    The Subordinated Promissory Note, in substantially the form attached hereto as Exhibit B, duly executed by an authorized officer of Purchaser;

    (iii)    The Guaranty Agreement, in substantially the form attached hereto as Exhibit E, duly executed by an authorized officer of TGES;

    (iv)    the Subordination Agreement, duly executed by an authorized officer of each of Purchaser, TGES and Lender;

    (v)    Any and all required transfer tax returns, duly executed by Purchaser, as transferee; and

    (vi)    A closing statement, duly executed by an authorized officer of Purchaser.

**10.**    **Representations and Warranties.**

    A.    Seller, represents and warrants to Purchaser as of the Effective Date and through the Closing Date:

    (i)    Seller has full power and authority and has obtained all necessary approvals or consents for the sale of the Property;

    (ii)    Seller is the fee simple owner of the Property;

    (iii)    No part of the Property is in violation of any governmental law, rule, or regulation or other governmental requirement;

    (iv)    To Seller's knowledge, no Hazardous Materials (defined below) (other than amounts necessary for operation of the Property) exists at or is adjacent to the Property; the Property is not and has not been listed on the National Priorities List, CERCLIS (defined below) or any similar state list, the Property is not or has not been the subject of any "Superfund" evaluation or investigation, or any other investigation or proceeding of any Governmental Authority (defined below) or of Seller's evaluating, whether any remedial action is necessary to respond to any release of any Hazardous Materials on or in connection with the Property;

    For purposes of this Agreement, the term **"Hazardous Materials"** shall mean any explosives, flammable substances, radioactive materials, asbestos in any form, paint containing lead, materials containing urea formaldehyde, polychlorinated biphenyls, oil, or petroleum products or byproducts, or any other hazardous, toxic, dangerous or otherwise regulated substances, wastes, pollutants, contaminants or materials, whether having such characteristics in fact or defined as such under federal, state, or local laws, or regulations and any amendments

thereto, including but not limited to the Comprehensive Environmental Response, Compensation and Liability Act of 1980, 42 U.S.C. §§ 9061 et seq. ("**CERCLIS**"), the Hazardous Materials Transportation Act, 49 U.S.C. §§ 1802 et seq., the Resource Conservation and Recovery Act, 42 U.S.C. §§ 6901 et seq. the Toxic Substance Control Act of 1976, as amended, 15 U.S.C. §§ 2601 et seq., the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 et seq., the Clean Air Act, 42 U.S.C. §§ 7401 et seq., the National Environmental Policy Act, 42 U.S.C. Section 4321, the Safe Drinking Water Act, 42 U.S.C. Sections 300F, et seq, and the Environmental Protection Agency and Occupational Safety and Health Administration regulations pertaining to asbestos.

(v) To Seller's knowledge, there has been no release or threatened release of any Hazardous Material to any soil, groundwater, surface water, building component, wastewater, air or other media on or from the Property during Seller's ownership, occupation or use by Seller or any of its affiliates, or at or from any other location where Seller or any of its affiliates arranged for the storage, treatment, disposal or handling of any Hazardous Material;

(vi) During the ownership, occupation or use by Seller or any of its affiliates, there have not been, and to Seller's knowledge prior to the ownership, occupation or use by Seller or any of its affiliates there were not, any underground storage tanks, above-ground storage tanks, underground piping, or Hazardous Materials used, stored, treated or disposed of at the Property; and

(vii) No litigation or proceeding or, to Seller's knowledge, governmental investigation is pending, or to Seller's knowledge, threatened against or relating to the Property or Seller.

For the purposes of this Agreement, a "**Governmental Authority**" shall mean any federal, state, district, commonwealth, territorial or local government within the United States of America, its territories and possessions (or any national, state or local government outside of the United States of America) and any political subdivision or quasi-governmental authority of any of the same, including any court, tribunal, department, commission, board, bureau, agency, county, municipality, province, parish or other instrumentality of any of the foregoing in its collection, storage, use, treatment or disposal.

B. Purchaser represents and warrants to Seller as of the Effective Date and as of the date of Closing that the execution, delivery and performance of this Agreement by Purchaser have been duly authorized by all necessary action on the part of Purchaser and do not require the consent of any third party and that the individual executing this Agreement on behalf of Purchaser has the authority to bind Purchaser to the terms of this Agreement.

**11. Failure of Conditions; Default**. If Seller is in default hereunder for failure to comply with any one or more of the material terms or conditions of this Agreement and such failure continues for more than five (5) business days after Seller's receipt of written notice by Purchaser, Purchaser at its sole option may: (a) terminate this Agreement by written notice delivered to Seller on or before the Closing and pursue all remedies available at law and for equity, (b) waive such defaults and proceed to Closing, or (c) enforce specific performance of this Agreement. If Purchaser defaults under this Agreement, and such default is not cured within five (5) days after written notice thereof from Seller, then Seller, as its sole option may: (a)

terminate this Agreement by written notice delivered to Purchaser on or before the Closing and pursue all remedies available at law and for equity, (b) waive such defaults and proceed to Closing, or (c) enforce specific performance of this Agreement.

**12.** **Notices**. All notices and other communications hereunder shall be addressed to the parties as follows:

| If to Seller: | Deupree's Gas, Inc.<br>P.O. Box 828<br>Sylacauga, Alabama  35150 |
|---|---|
| If to Purchaser: | Suburban Gas Propane Partners, LLC<br>1850 Dual Highway, Suite 203<br>Hagerstown, MD 21740 |
| With required copies to: | DLA Piper US LLP<br>6225 Smith Avenue<br>Baltimore, Maryland  21209<br>Attn: Mathew Gorra, Esq. |

Any notice, demand or other communication (each, a "**notice**") that is given pursuant to this Agreement by either Seller or Purchaser to the other party(ies), shall be (i) given in writing, (ii) addressed to the other party(ies) at its required address(es) for notices delivered to it as set forth above, and (iii) delivered via either (x) hand delivery, (y) nationally recognized courier service (e.g., DHL, Federal Express, Express Mail) or (z) certified U.S. mail postage prepaid with return receipt requested. Any such notice shall be deemed given, and effective for purposes of this Agreement, as of the date actually delivered to the other party(ies) at such address(es) (whether or not the same is then received by other party(ies) due to a change of address of which no notice was given, or any rejection or refusal to accept delivery). Notices from either party(ies) (to the other(s)) may be given by its, his, or her attorneys. Each party may, from time to time, designate an additional or substitute required address(es) for notices delivered to it (provided, that such designation must be made by notice given in accordance with this Section 12).

**13.** **Parties Bound**. This Agreement shall be binding upon and inure to the benefit of Seller and Purchaser and their respective successors and permitted assigns.

**14.** **Governing Law; Arbitration**. (a) The laws of the State in which the Property is located shall govern the validity, construction, enforcement and interpretation of this Agreement.

(b)  Any dispute, claim or controversy arising out of or relating to this Agreement or the breach, termination, enforcement, interpretation or validity thereof, including the determination of the scope or applicability of this agreement to arbitrate, shall be submitted to and finally determined by arbitration in the State of Maryland before a sole arbitrator. The arbitrator shall be selected, and the arbitration shall be conducted, in accordance with the Comprehensive Arbitration Rules and Procedures of JAMS. The arbitrator's decision shall be final and binding. Judgment on the award of the arbitrator may be entered in any court having jurisdiction. Any post-award proceedings shall be conducted in accordance with the Federal

Arbitration Act, 9 U.S.C. Sec. 1, *et seq*. Unless Seller and Purchaser otherwise agree in writing, the costs of the arbitration, including the fees and expenses of the arbitrator, shall be shared equally by the parties. Each party shall bear its own costs and attorneys' fees related to the arbitration, provided that the losing party shall bear the costs of the arbitrator appointed under JAMS.

(c) Notwithstanding the preceding binding arbitration provisions, Seller and Purchaser agree to preserve, without diminution, certain remedies enumerated below, which any party hereto may employ or exercise freely, independently or in connection with an arbitration proceeding or after an arbitration action is brought. The parties shall have the right to proceed in any court of proper jurisdiction or by self-help to obtain provisional or ancillary remedies, including preliminary injunctive or declaratory relief, sequestration, garnishment, attachment, appointment of receiver and filing an involuntary bankruptcy proceeding. Preservation of these remedies does not limit the power of an arbitrator to grant similar remedies that may be requested by a party in a dispute.

**15.** **Brokers**. Seller and Purchaser represent and warrant that there have been no real estate brokers involved in this transaction (the "**Broker**"). If any broker should make a claim for a commission based upon the actions of Seller, Seller shall, jointly and severally, indemnify, defend and hold Purchaser harmless from such claim. If any broker should make a claim for a commission based upon the actions of Purchaser, Purchaser shall indemnify, defend and hold Seller harmless from such claim.

**16.** **Multiple Counterparts**. This Agreement may be executed in a number of identical counterparts. If so executed, each of such counterparts shall, collectively, constitute one agreement, but in making proof of this Agreement, it shall not be necessary to produce or account for more than one such counterpart. Neither this Agreement nor any memorandum thereof shall be recorded.

**17.** **Time of the Essence**. The parties hereto expressly agree that time is of the essence with respect to this Agreement.

**18.** **Entire Agreement**. This Agreement embodies the entire agreement of the parties with respect to the transaction herein contemplated, superseding all prior agreements and communications whether oral or written. Any amendments hereto shall be in writing and executed by the party against whom enforcement of the modification is sought.

**19.** **Severability**. If any provision of this Agreement or the application thereof to any party or circumstances shall to any extent be invalid or unenforceable, the remainder of this Agreement, or the application of such provision to parties or circumstances other than those as to which it is invalid or unenforceable, shall not be affected thereby, and each provision shall be valid and be enforced to the fullest extent permitted by law.

**20.** **Captions**. The captions of the various Sections in this Agreement are for convenience only and do not, and shall not be deemed to, define, limit or construe the contents of such Sections.

    **21.**   <u>Construction</u>. The parties acknowledge that the parties and their attorneys have reviewed and revised this Agreement and that the normal rule of construction to the effect that any ambiguities are to be resolved against the drafting party shall not be employed in the interpretation of this Agreement or any exhibits or amendments hereto.

    **22.**   <u>Terminology</u>. As used in this Agreement, (i) the phrase **"and/or"** when applied to one or more matters or things shall be construed to apply to any one or more or all thereof as the circumstances warrant at the time in question, (ii) the terms **"herein" "hereof"** and **"hereunder"**, and words of similar import, shall be construed to refer to this Agreement as a whole, and not to any particular Section, unless expressly so stated, (iii) the term **"including"**, whenever used herein, shall mean **"including without limitation"**, except in those instances where it is expressly provided otherwise, (iv) the term **"person"** shall mean a natural person, a corporation, a limited liability company, and/or any other form of business or legal association or entity, and (v) the term **"business day"** shall mean any day other than a Saturday or Sunday or Federal holiday or legal holiday in the State in which the Property is located.

*[Signatures appear on following page]*

**EXECUTION VERSION**

IN WITNESS WHEREOF, the parties hereto have, by their duly authorized representatives, executed this Agreement as of the Effective Date.

"SELLER"

DEUPREE'S GAS, INC.

By: *[signature]*
Name: Deupree's Gas, Inc.
Title: Pres.
Date: 10/24/07

"PURCHASER"

SUBURBAN GAS PROPANE PARTNERS, LLC

By: *[signature]*
Name: J. Randall Thompson
Title: President
Date: 10-24-07

- 8 -

# EXHIBIT A

## DESCRIPTION OF THE PROPERTY

Commence at a railroad spike in place being accepted as the Northeast corner of Section 26, Township 21 South, Range 3 East, Talladega County, Alabama; thence proceed North 89° 47' 35" West along the North boundary of said section for a distance of 660.0 feet; thence proceed South 00° 12' 25" West for a distance of 528.0 feet to a 1" open top pipe in place; thence proceed South 88° 55' 25" West for a distance of 132.50 feet to a ⅜" rebar in place, said point being the point of beginning. From this beginning point proceed South 89° 58' 13" West for a distance of 499.21 feet (set ½" rebar) to a point on the flare-back of U. S. Highway 280; thence proceed South 21° 55' 50" East along said flare-back for a distance of 164.93 feet (set ½" rebar) to a point on the Northerly right-of-way of said U. S. Highway 280; thence proceed Southeasterly along the right-of-way of said highway and along a concave curve left having a radius of 4433.75 feet for a chord bearing and distance of South 46° 52' 37" East, 222.71 feet to a ½" rebar in place; thence proceed North 41°59' 57" East for a distance of 411.08 feet to the point of beginning.

The above described land is located in the Northeast one-fourth of the Northeast one-fourth of Section 26, Township 21 South, Range 3 East, Talladega County, Alabama. Subject to easements and rights of way of record.

**EXECUTION VERSION**

# EXHIBIT B

# SUBORDINATED PROMISSORY NOTE

EXECUTION VERSION

## EXHIBIT C

## FORM OF DEED

## WARRANTY DEED

STATE OF ALABAMA )

TALLADEGA COUNTY )

KNOW ALL MEN BY THESE PRESENTS, that in consideration of Six Hundred Thousand and no/100 DOLLARS ($600,000.00), to the undersigned Grantor in hand paid by the Grantee herein, the receipt whereof is acknowledged, Deupree's Gas, Inc., an Alabama corporation (herein referred to as Grantor), do grant, bargain, sell and convey unto Suburban Gas Propane Partners, LLC, a Maryland limited liability company, whose address is 1850 Dual Highway, Suite 203, Hagerstown, Maryland 21740 , (herein referred to as Grantee), the following described real estate situated in Talladega County, Alabama, and all appurtenances thereto, to-wit:

> Commence at a railroad spike in place being accepted as the Northeast corner of Section 26, Township 21 South, Range 3 East, Talladega County, Alabama; thence proceed North 89° 47' 35" West along the North boundary of said section for a distance of 660.0 feet; thence proceed South 00° 12' 25" West for a distance of 528.0 feet to a 1" open top pipe in place; thence proceed South 88° 55' 25" West for a distance of 132.50 feet to a ⅜" rebar in place, said point being the point of beginning. From this beginning point proceed South 89° 58' 13" West for a distance of 499.21 feet (set ½" rebar) to a point on the flare-back of U. S. Highway 280; thence proceed South 21° 55' 50" East along said flare-back for a distance of 164.93 feet (set ½" rebar) to a point on the Northerly right-of-way of said U. S. Highway 280; thence proceed Southeasterly along the right-of-way of said highway and along a concave curve left having a radius of 4433.75 feet for a chord bearing and distance of South 46° 52' 37" East, 222.71 feet to a ½" rebar in place; thence proceed North 41°59' 57" East for a distance of 411.08 feet to the point of beginning.

> The above described land is located in the Northeast one-fourth of the Northeast one-fourth of Section 26, Township 21 South, Range 3 East, Talladega County, Alabama.

> Subject to easements and rights of way of record. All improvements are sold "AS IS".

> $600,000 of the above recited purchase price was paid by a mortgage loan closed simultaneously herewith.

TO HAVE AND TO HOLD, to the said Grantee, its successors or assigns forever.

**EXECUTION VERSION**

And Grantor does for itself and for its successors or assigns covenant with the said Grantee, its successors or assigns, that it is lawfully seized in fee simple of said premises; that they are free from all encumbrances except as set forth herein and that it has a good right to sell and convey the same as aforesaid; that it will and its successors or assigns shall warrant and defend the same to the said Grantee, its successors or assigns forever against the lawful claims of all persons claiming by, through, or under Grantor.

IN WITNESS WHEREOF, the Deupree's Gas, Inc. has caused these presents to be executed in its name and on its behalf by James L. Deupree, Jr., its President, who is thereunto duly authorized, on this, the 24th day of October, 2007.

ATTEST:                                        Deupree's Gas, Inc.

_____      BY_____
SECRETARY                                  James L. Deupree, Jr., Its PRESIDENT

STATE OF ALABAMA     )

TALLADEGA COUNTY   )

I, the undersigned Notary Public, in and for said County and State, hereby certify that James L. Deupree, Jr., and Charles A. Deupree, whose names as President and Secretary, respectively, of Deupree's Gas, Inc., a corporation, are signed to the foregoing conveyance, and who are known to me, acknowledged before me on this day that, being informed of the contents of the conveyance, they, as such officers and with full authority, executed the same voluntarily for and as the act of said corporation.

Given under my hand this, the 24th day of October, 2007.

_____
NOTARY PUBLIC

**EXECUTION VERSION**

**EXHIBIT D**

**SUBORDINATION AGREEMENT**

EXECUTION VERSION

# EXHIBIT E

# GUARANTY AGREEMENT